## UNITED NICKEL Co. *v.* CALIFORNIA ELECTRICAL WORKS.

*(Circuit Court, D. California.*    October 31, 1885.)

PATENTS—NICKEL PLATING—INFRINGEMENT.
　　The evidence examined, and *held,* that the letters patent granted to Dr. Adams, August 4, 1869, (No. 93,157,) for nickel plating were for a new and useful invention, and valid; and also that they had been infringed.

In Equity.   The opinion states the facts.
*Scrivner & Boone,* for complainant.
*Wright & Cormac* and *Wilson & Wilson,* for defendant.

SAWYER, J., *(orally.)*   In this case it is objected on the part of the defendant that the complainant fails to make out a case in three particulars: "*First,* that the complainant is estopped from enforcing its right of action, if any such existed, by a course of conduct which amounted to an implied license to the defendant to pursue the work for which it has been sued; *second,* that the complainant has not proved with reasonable certainty its allegation of infringement by defendant; *third,* that the matter covered by the letters patent was not novel or useful at the time of its alleged invention."

I have carefully considered the testimony, and am satisfied that the complainant has proved the infringement as alleged; and that both the first and fourth claims have been infringed.   I therefore decide that point against the defendant.

*Third,* with reference to novelty and usefulness, that the invention is useful does not admit of doubt.   As to its novelty, that is a question that has been litigated by the ablest patent lawyers, before the most experienced judges in patent laws in the Union, for the last 15 years, in case after case.   In every instance, so far brought to my attention, the patent has been sustained upon the point of novelty. Of course, those decisions are not binding on this court as to the facts in this case, but they indicate the views of other courts upon similar states of facts, which have been repeatedly fully presented and considered.   This case, however, must be decided upon the testimony introduced here.   There is an effort, and the only substantial effort made to defeat the patent upon the question of novelty, to show that one Dr. Boettger, somewhere before 1843, made the invention and described how nickel plating could be done, and that his process was described in a book published as early as 1843, and in subsequent editions, though no witness had seen the book or knew of its date except from hearsay and the date inscribed on the book, it being a German publication, until some time in 1869, and the date of this patent is August 4, 1869.   Some experiments have been made by scientific gentlemen to show that it is practicable to nickel plate by the use of Dr. Boettger's solution, and proceeding in accordance with his directions. Dr. Boettger's process could not well have been overlooked in the trial

of former cases, considering the character of the publication in which it was found, and the number and ability of the counsel and of the judges who have constantly dealt with the question of novelty, although I see no direct allusion to it in any of the cases except that of *United Nickel Co.* v. *Melchior,* (at Chicago,) 17 Fed. Rep. 340, wherein it was before the court, and referred to by the judge hearing the case. In that case Judge BLODGETT referred to the testimony introduced on the issue of novelty, additional to that which appeared to have been before presented to the courts, and referred to Boettger's solution, but said nothing had been presented that satisfied his mind of the want of novelty in Adams' invention. In this connection he said:

"Much testimony has been put into the record in this case bearing upon the question of novelty of these two patents. But a careful examination of the proof satisfies me that all this testimony which is worthy of attention has been considered by the courts before whom these patents have been heretofore adjudicated, and that no new light is shed by the testimony upon the question of novelty. The same ground seems to have been gone over in the former cases that is shown in this, and the devices held to be novel and patentable."

This passage applies with even greater force to the present case. Other scientific works, German and English, were referred to in the numerous cases heretofore tried, some in one and some in others, but in all of the cases the novelty of the invention was affirmed. When we consider the number, experience, and ability of the counsel engaged in the numerous cases heretofore tried, and the number and experience of the judges, including nearly all the judges of the circuit courts having the most experience in patent cases, including Mr. Justice BLATCHFORD of the supreme court, it is scarcely to be supposed that Dr. Boettger's description of a process has been overlooked, or has not been duly considered and ruled upon.

Whatever the truth may be with reference to Dr. Boettger's experiments, and the work referred to, they seem to have been simply scientific experiments in the labratory, in which he ascertained that by preparing and using the material in the way he pointed out nickel could be deposited, and nickel plating, on a small scale, be accomplished. That is as far as he went. He did not reduce it to a practical art. It does not appear that he ascertained all the conditions necessary to success, but simply that the particular solution would accomplish the object as a scientific experiment. This discovery was not employed or used in the general affairs of life, and down to 1869 there was no practical work of that kind, so far as the evidence shows, —that is to say, it had not become a practical art. It was not applied to the practical and commercial uses of life. And Boettger's method is not even now used. All appear to be using Adams' invention. As Judge BLATCHFORD said, Dr. Adams appears to have first discovered the conditions necessary to practical nickel plating, and to have introduced his discovery into the arts, and applied it to the

practical purposes of life. He ascertained the conditions which were necessary, and reduced nickel plating to a practical, useful art. The value of nickel plating was known before, and it had often been sought to render it practically available, but the efforts made had never been successful until Dr. Adams introduced it to the knowledge of the world. The strongest light in which the evidence can be put against the novelty only shows that there is a doubt whether nickel plating was reduced by Dr. Boettger to a practical art in such a way as to avoid the patent. The patent is *prima facie* evidence of its novelty, and that must be overthrown. There was a great known want—a valuable use and demand—for nickel plating in the affairs of practical life. Its value was known, and parties were seeking for some mode of making it available for the valuable uses to which it was applicable. Notwithstanding this recognized want, Boettger's process was not in use in practical affairs prior to 1869. Immediately after the discovery by Dr. Adams, and the promulgation of his patent, in that year, the art became known and largely practiced, and the product went into immediate and extensive use. Manufactories were established all over the country for nickel plating. All kinds of implements that go into the daily uses of practical life were treated by his process. One witness says it would be less difficult to mention things that were not nickel plated than those that were. As soon as the practical question was solved the product went immediately into extensive use, and that use increased from day to day from that time on. This fact constitutes convincing evidence that something was wanting in the processes previously known, and is very persuasive evidence of the novelty of Adams' invention. In view of all the circumstances it is amply sufficient to establish its novelty, and the testimony in this case, like that in the other case cited, is insufficient to rebut that proposition. I therefore hold that the novelty is established.

In my comments on the next proposition it will further appear to what extent this invention has gone into use, and no doubt can remain as to its usefulness. That proposition is that the invention has been used under such circumstances as to estop the complainant from asserting its right under the patent. The circumstances mainly relied on are that this solution which Dr. Adams used in his process of electro plating has been sold by his authority by the firm of Condit, Hanson & Van Winkle, in New Jersey, with descriptions given of the mode of using, and of all the conditions essential to successful nickel plating; that it was sold, not only by this firm, but it was sold generally by other firms. With reference to this fact it is alleged that the firm of Condit, Hanson & Van Winkle has sent out pamphlets giving descriptions of the whole process, and advertising the solution and preparation under the patent for sale, for the purpose of nickel plating, without indicating that it was patented. Several pamphlets were introduced by the defendant to show that fact; some is-

sued by the *old* firm of of Hanson & Van Winkle dated as far back as 1876. There is no notice in the earlier pamphlets of the patent; but, at that time, these parties were not agents of the complainant, but were infringers themselves, and they then had suits for infringement pending against them. In 1881 they issued a new pamphlet, (defendant's Exhibit 8,) and on the second page of the pamphlet we find this statement:

"After the decisions of Judge BLATCHFORD in the suits of the United Nickel Company against *a large number of manufacturers in New York*, in which the nickel-plating patents were again sustained, and subsequent injunctions granted against the Gore and other solutions, the American Manufacturers' Association, *composed of some forty of the largest manufacturers in the country*, decided in a body to abandon the suits and take out licenses; their action has been followed by many others throughout the country, *the licenses now numbering about three hundred*. The result has been, so far, to advance the price of nickel-plated goods; notably saddlery, hardware, stoves, etc."

Then they go on, under the date of June 1, 1878, and publish this:

"The United Nickel Company has this day granted to Condit, Hanson & Van Winkle, of Newark, N. J., the exclusive license for manufacturing cast-nickel anodes under their various patents, [the use of certain anodes is one of the claims in this patent, but not claimed to be violated; but complainant has other patents covering anodes,] requiring from them a standard of quality that will insure the best results in the hands of our licensees, and at reasonable prices, to be governed by the market price of pure nickel. All nickel anodes manufactured by them hereafter will have the name of the United Nickel Company and date of patents upon them; and we therefore notify all parties against manufacturing, selling, or using cast-nickel anodes not made under our license."

This is the edition published in 1881. That agreement was made in June, 1878. It shows that these patents having been contested and always sustained, all the leading nickel-plating establishments then infringing combined together to abandon the infringement and take out licenses. This pamphlet is express notice, sent to purchasers with the goods purchased, of the condition of this patent; but that is not all. The manufacture and sale of this solution proposed under the patent do not authorize the nickel plating covered by the first and fourth claims. The first and fourth claims of the patent do not cover the process of manufacturing the solutions necessary for nickel plating. That is embraced as a distinct invention under the third claim,—the methods described for preparing the solution of the double sulphate of nickel and ammonia. The third claim of the patent is as follows: "The methods herein described for preparing the solution of the double sulphate of nickel and ammonia and the double chloride of nickel and ammonium." The third claim of the patent, then, covers this process of making the proper solution to be used.

Complainant does not claim that the third claim is infringed. Desiring, of course, to make the patent a success, complainant provides for a recognized place, where the solution, properly manufactured according to the patent in such manner as would make the nickel

plating a complete success, can be obtained. . Hence, Condit, Hanson & Van Winkle are authorized to sell that solution. These parties only bought the solution. Had they used it without having bought it from a licensed party they would have infringed the *third* claim of the patent, as well as the *first* and *fourth*. The infringement of the third claim of the patent has nothing to do with the claims now infringed. Having bought the solution from authorized parties, there was no infringement of the third claim. But this fact does not affect any other claims of the patent. The fact that they purchased from authorized agents this solution which enables them to nickel plate, does not, inferentially or otherwise, authorize them to use it in nickel plating without obtaining a license to use the invention covered by the other claims. They must also get a license to use the inventions covered by the other claims, or they cannot use this without being liable as infringers. Each claim is, in effect, a separate and distinct patent; and the right to use one patent does not carry with it the right to use the others without a further license. The first claim which is infringed is as follows:

"The electro-deposition of nickel by means of a solution of the double sulphate of nickel and ammonia, or a solution of the double chloride of nickel and ammonium, prepared and used in such a manner as to be free from the presence of potash, soda, alumina, lime, or nitric acid, or from any acid or alkaline reaction."

That is what the first claim is. It is plating by means of the described solution; and the conditions under which plating can be done is that the double sulphate of nickel and ammonia, or a solution of the double chloride of nickel and ammonium, must be prepared in such a manner as "to be free from the presence of potash, soda, alumina, lime, or nitric acid, or from any acid or alkaline reaction." Those are the essential conditions which Adams discovered, and it does not appear that Dr. Boettger ever discovered that those were necessary conditions. It does not appear that he ever discovered that the absence of all these elements is essential to successful nickel plating, for commercial purposes. This is the first claim. The defendant has infringed it. The defendant uses Adams' preparation to accomplish his purposes. That preparation is covered by the third claim. The first is a claim in addition to that. The selling of the solution does not authorize, inferentially or otherwise, the use of it for the purpose of nickel plating, whatever else it may be used for, without also procuring a license to nickel plate under the first and fourth claims, which are separate inventions.

Again, defendant says that at the time Adams discovered the necessary conditions for nickel plating, and brought them before the public, the nickel of commerce was impure, and it was necessary to prepare it. Now, it is said, the nickel of commerce is pure, and any one can buy it, and the nickel plating can be accomplished by using it in the form in which it is found, without going through the process

preparing the solution as described by Adams, and that there is, consequently, no infringement by using now the nickel of commerce; that a more nearly pure article of nickel has been discovered; or, at all events, the nickel of commerce is in such a condition that it can be successfully used now in a solution not prepared in all respects under Dr. Adams' process. But consider this to be so, still all the conditions in the aggregate appear to be the same. If that be so, it only shows that commerce demands an article of nickel free from some of the deleterious elements, and which is in a proper condition to be used in solution without otherwise previously eliminating them; hence those preparations at this day for commerce. But, even on that hypothesis, Dr. Adams still discovered the conditions necessary to successful nickel plating; and the demands of commerce are that the articles shall be in such a state as to conform to the conditions necessary to use in that art; that is to say, the nickel must be made in some way to conform to the conditions when in solution which he describes as necessary, in order to make nickel plating a success in the practical arts of life. The demands of commerce, therefore, on that hypothesis, are such that the necessary conditions must exist, either in the preparation of the solution, or in the prior preparation of the nickel used which enters into the solution; but the use of the conditions of nickel plating is none the less a violation of the patent because the nickel is put in a condition by which it can be introduced into the solution with less trouble and expense. All this preparation is made subsequently to the discovery of the conditions on which practical nickel plating can be successfully carried on, and therefore cannot avail to avoid a violation of the patent. But the defendant did use complainant's solution in its works, and used his invention, and not that of any prior discoverer. I think complainant is not estopped, and that the first and fourth claims are infringed.

The fourth claim is:

"The electro-plating of metals with a coating of compact, coherent, tenacious, flexible, nickel of sufficient thickness to protect the metal upon which the deposit is made from the action of corrosive agents with which the article may be brought in contact."

Let there be a decree for complainant as to the first and fourth claims, and a reference to the master to ascertain the profits and damages sustained.