## DAVIS ELECTRICAL WORKS et al. v. EDISON ELECTRIC LIGHT CO. et. al.

(Circuit Court of Appeals, First Circuit. February 9, 1894.)

### No. 83.

PATENTS—INFRINGEMENT—REPAIR AND RECONSTRUCTION—ELECTRIC LAMPS.

It is reconstruction, and not merely repairing, to make a hole in the bulb of an Edison incandescent electric lamp, (patent No. 223,898,) in which the carbon filament has been destroyed by use, and put in a new filament having its ends inserted in platinum sleeves, close the hole by fusing a piece of glass over it, and then exhaust the air. 58 Fed. 878, affirmed.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

This was a bill in equity brought by the Edison Electric Light Company and the Edison General Electric Company to enjoin the Davis Electrical Works, Leonard L. Davis, and Charles F. Wittemore from infringing the Edison incandescent electric lamp patent No. 223,898, issued January 27, 1880. A preliminary injunction was granted below, (58 Fed. 878,) and defendants appeal to this court under the seventh section of the judiciary act of March 3, 1891. The matter complained of was that defendants were engaged in replacing the carbon filament of Edison lamps, after the original filament had been destroyed by use. This, complainants alleged, was a reconstruction of the lamp, amounting to infringement of the patent; while defendants claimed that it was mere repairing, which they were entitled to perform. The process, as described by the court below, was as follows: "The defendants first break off the tip of the glass bulb of the lamp, and ream out a hole about one-half inch in diameter. The broken filament is then removed. The new filament, having its ends cemented into platinum sleeves, is then inserted into the glass chamber, the sleeves being pushed down over the two platinum leading-in wires, and compressed upon them. A tube of glass, made into the shape of a tunnel, is heated, and placed over the hole in the lamp chamber. This tube is fused into the open end of the bulb, which brings it into the condition of the ordinary lamp bulb just prior to exhaustion. The air is then exhausted, and the bulb sealed."

John L. S. Roberts and John Lowell, for appellants.

F. P. Fish, Richard N. Dyer, and W. K. Richardson, for appellees.

Before PUTNAM, Circuit Judge, and NELSON and WEBB, District Judges.

PUTNAM, Circuit Judge. In this case the circuit court, on the 13th day of December, 1893, entered an order for a preliminary injunction, and for a writ of injunction to issue accordingly.. From that order the defendants below, in accordance with the seventh section of the act establishing this court, took an appeal, which came on to be heard on the 18th day of January, 1894. It does not appear that a supersedeas was obtained or asked for.

A preliminary question was made at the bar touching the nature

of the adjudication to be made by this court on an appeal of this character. The appellees have brought the attention of the court to the ruling of the circuit court of appeals in the sixth circuit, found in Blount v. Societe Anonyme du Filtre Chamberland Systeme Pasteur, 3 C. C. A. 455, 53 Fed. 98, the pith of which is in the closing words of a sentence on page 458, 3 C. C. A., and page 102, 53 Fed.:

"This court, under the present appeal, is not called upon to make any final decision as to the validity of the patent or the infringement thereof, nor is the consideration of those questions either necessary or proper, further than to ascertain whether the order complained of was an improvident exercise of a legal discretion on the part of the circuit court."

It is claimed that the same rule has been reached in the second circuit in American Paper Pail & Box Co. v. National Folding Box & Paper Co., 2 C. C. A. 165, 51 Fed. 229; in the third circuit in Consolidated Electric Storage Co. v. Accumulator Co., 5 C. C. A. 202, 55 Fed. 485; and in the fifth circuit in Hart v. Buckner, 5 C. C. A. 1, 54 Fed. 925, and in Workingmen's Amalgamated Council of New Orleans v. U. S., 6 C. C. A. 258, 57 Fed. 85. The appellees also refer to Richmond v. Atwood, 2 C. C. A. 596, 52 Fed. 10, and especially to a proposition found on page 24, and to the alleged practice in England and elsewhere, as stated in Daniell, Ch. Pr. (4th Ed.) p. 1462, and in High, Inj. (3d Ed.) § 1696.

We do not find it necessary to comment on these citations, except to suggest that that from the second circuit, especially in view of Curtis v. Wheel Co., 58 Fed. 784,[1] may be found to lean against the appellees. If their position is correct, the result is that parties aggrieved by orders of circuit courts, under circumstances like these at bar, are disenabled from having "the case" tried on appeal, and are cut down to a question whether or not the court below has acted within the limits of its discretion. This court has regarded the purposes of the section in question as highly remedial, and has not been disposed to clip its wings in any particular; but whether it will limit the exercise of its judicial powers as claimed by the appellees need not now be determined, because, in either view of the question, we should reach the same result. We are satisfied that the order of the circuit court was within the limits of its judicial discretion, and also, on examining the case de novo, that that discretion was correctly exercised.

The case was heard in the court below on affidavits, and before any answer was filed. It is conceded that the second claim of the patent in controversy, which is the only claim of which we are requested to take cognizance, is valid, at least for the purposes of this hearing; and, for the same purposes, it is proper to accept the conclusions of the United States circuit court of appeals for the second circuit, which will hereafter be cited, as to the construction of the claim and the advance from the prior state of the art which it represents. Therefore our conclusions will be without prejudice to any question touching the validity of the patent or its construction, or the advance from the prior state of the art which it repre-

sents. The only matter really in question before us is that of infringement; and even touching this, inasmuch as the case is now heard without answer and on affidavits, whatever conclusion we now reach would not necessarily preclude a different one, if the case should hereafter come to us on an appeal from a decree entered after a hearing on bill, answer, and proofs. The claim in controversy is in the following language:

"2. The combination of carbon filaments with a receiver made entirely of glass, and conductors passing through the glass, and from which receiver the air is exhausted, for the purposes set forth."

While there may be some matters of detail in construction described in the specifications which are novel, but as to which the court is not now called upon to determine whether, if claimed, they would have been patentable, it appears, on the case presented, that, of the elements in the combination set out in claim two, the carbon filament, in use in a vacuum, represents the entire advance from the state of the art, so far as this claim is concerned. Such appears to have been the substantial finding in the opinion of the United States circuit court of appeals in the second circuit in Edison Electric Light Co. v. United States Electric Lighting Co., 3 C. C. A. 83, 52 Fed. 300. The judgment following this opinion was filed in the court below on the hearing of the motion for the injunction appealed from, and the opinion was probably laid before that court, though the record does not show it. It is, however, submitted for our consideration without objection, and is certainly to be considered on a question of an ad interim injunction. It contains the following:

"Edison's invention was practically made when he ascertained the theretofore unknown fact that carbon would stand high temperature, even when very attenuated, if operated in a high vacuum, without the phenomenon of disintegration. This fact he utilized by the means which he has described,—a lamp having a filamentary carbon burner in a nearly perfect vacuum."

As strong an expression as any of the rule from which flows the right to repair a patented device which has been put on the market is found in Chaffee v. Belting Co., 22 How. 217, 223, as follows:

"When the patented machine rightfully passes to the hands of the purchaser from the patentee, or from any other person by him authorized to convey it, the machine is no longer within the limits of the monopoly. According to the decision of this court in the cases before mentioned, it then passes outside of the monopoly, and is no longer under the peculiar protection granted to patented rights. By a valid sale and purchase, the patented machine becomes the private individual property of the purchaser, and is no longer protected by the laws of the United States, but by the laws of the state in which it is situated. Hence it is obvious that, if a person legally acquires a title to that which is the subject of letters patent, he may continue to use it until it is worn out, or he may repair it or improve upon it, as he pleases, in the same manner as if dealing with property of any other kind."

This, and other expressions of like character in the decisions of the supreme court, as in Adams v. Burke, 17 Wall. 453, and Hobbie v. Jennison, 149 U. S. 355, 13 Sup. Ct. 879, are, however, of a general nature, and were made with reference to the interests of the

purchaser of a patented device as against an extension of the patent, or with reference to territorial rights. Out of this rule, however, flows the right of repair, on which the appellants rely; yet in no case has the supreme court held that this right is absolute and universal, or that it may not be limited by express or implied restrictions entering into the transaction of the sale of the patented machine or device. Expressions the other way may be found in Wilson v. Simpson, 9 How. 109, 125; Adams v. Burke, 17 Wall. 453, 457; and Hobbie v. Jennison, 149 U. S. 355, 363, 364, 13 Sup. Ct. 879. We prefer, however, not to rest the case on any implied reservation arising from the nature of the device now in question, although leaning to an agreement with the circuit court in that particular, as we are clear that the work done by defendants is not reparation, but reconstruction.

In considering this proposition, it must be conceded that we can draw no direct assistance from Wilson v. Simpson, ubi supra, where merely replacing the cutters in a large patented combination, constituting a planing machine, was all that was done. The only other decision of the supreme court brought to our attention which bears directly on what constitutes reparation is Cotton-Tie Co. v. Simmons, 106 U. S. 89, 1 Sup. Ct. 52, which, while the facts in no two cases can be strictly analogous in all respects, is very persuasive in favor of the complainants below. In that case, the third claim of the Brodie patent, the combination which made up the cotton tie, included a band and a link or buckle. The court said, (page 93, 106 U. S., and page 52, 1 Sup. Ct.:)

"The band in a condition fit for use with the buckle is an element in the third claim of the Brodie reissue."

And the court continued on page 94, 106 U. S., and page 52, 1 Sup. Ct.:

"The band was voluntarily severed by the consumer at the cotton mill, because the tie had performed its function of confining the bale of cotton in its transit from the plantation, or the press, to the mill. Its capacity for use as a tie was voluntarily destroyed. As it left the bale it could not be used again as a tie. As a tie the defendants reconstructed it, although they used the old buckle without repairing that. The case is not like putting new cutters into a planing machine in place of those worn out by use, as in Wilson v. Simpson, 9 How. 108."

The court held that Brodie's third claim was thus infringed.

To paraphrase the above citation, it might be said that the capacity of the filament in the case at bar for use as such was voluntarily destroyed, not, to be sure, by breakage, but by continuous voluntary use, and that, after it was taken out by the respondents, it could not be used again as a filament. This, however, standing alone, may be misleading. Therefore, it is necessary to look further.

We need to be careful not to be deceived by the form of things. In the planing machine every part might be renewed in succession, or every joint might be temporarily taken apart, and every element laid in disorder, without necessarily involving reconstruction. On the other hand, in certain stages of use the essence of a device,

though in appearance only a small portion of it, may be lost, and its renewal amount to reconstruction. Whether the result is this or reparation depends less on the determination of rules of law, or of successive propositions in a logical series, than on the direct apprehension of questions of fact by the sound mind, trained in the common experience of mankind, and guided by the evidence laid before it. The conclusions which for the major part satisfy that apprehension must be accepted, although they may be very far from infallibility. In the absence of a crucial test to which all must yield, the only aid comes from various minor or incidental considerations, and their combined effect.

We are dealing in this case, not with a lamp, nor even with a so-called electric lamp, but with the particular so-called electric lamp covered by the claim in question here. In determining between reparation and reconstruction, we must deal with the essence of that, and of that only. It may be that for many patented combinations each element is, for some purposes, of equal value, as claimed by the appellants; but this rule is limited mainly to the question of the construction to be put by the court on the patent, when that is in doubt. It cannot control the apprehension of courts or juries, when seeking out the substance of things, with reference to the particular determination whether what is in form reconstruction is in truth reparation, or vice versa. The latter question is, as already said, one largely of fact, appropriate in suits at law for a jury, under proper instructions from the court; while the rule that, prima facie, all elements of a particular combination are of equal value, or at least essential, is presumably one of law, arising sometimes on the face of the patent, and at other times to be determined by the court in view of whatever extrinsic facts may be applicable.

The proposition of the appellants that, if the injunction stands, it gives the complainants below the same benefit as though the patent contained a claim for the filament alone, serves properly to caution us, but cannot operate as a definitive limitation on our conclusions. For the latter purpose the argument goes too far. In the Telephone Cases, 126 U. S., the court said (page 533, and 8 Sup. Ct. 778) that other inventors might compete with Bell for the ways of giving effect to his discovery, yet in the state of the art as it was then the conclusions of the supreme court gave Bell a practical monopoly of that discovery. So, ordinarily, if the new element in a combination is associated in the claim with additional elements which, in the state of the art, there is no practical method of replacing by others, the patentee obtains the same practical advantages as though this new element had been claimed alone,—at least until the art makes new discoveries. Neither in such instances, nor in the case at bar, is the course of the law to be turned aside because the practical result may be to give a patentee for the time being more than the patent office contemplated, nor is the patentee to be deprived of his just rights because under some circumstances he gets incidental advantages beyond what he expressly bargained for. We do not in terms give the patentee the benefit of a claim for the filament alone, nor prohibit its use in some other combination than

that set out in the second claim, if some ingenious way of making such other combination is ever discovered.

The appellants do not bring themselves within the expression in Wilson v. Simpson, 9 How. 125, renewed in substance in Cotton-Tie Co. v. Simmons, 106 U. S. 94, and page 52, 1 Sup. Ct., to the effect that temporary parts may be replaced "in accordance with the intention of the vendor." While the supreme court has not expressly given this as a limitation, it may be made effectual as a permit where the facts authorize it. In this case the plan of construction, which permits no severance of the parts by any ordinary method of detachment, the sale price of the entire device, about 30 cents, the comparatively large cost of the so-called reparation, the special skill required to make it, the fact proven that the device is made so cheaply that it can be thrown away without substantial loss when the filament is worn out, and the experience that, though the patent had run about 13 years, and some 13,000,000 lamps had been made before respondents below commenced the so-called reparations, destruction of the lamp after the filament was worn out had been the rule, distinguish this device in this respect from those which preceded it, exclude the suggestion of either express or implied assent by the patentees to a renewal of the filament, and compel the appellants to meet directly the issue of reparation as against reconstruction.

In the view of the court, the attempted analogy by which the appellants seek to maintain their position shows the futility of their efforts to do so, and guides the mind to the proper solution of this case. Their affidavits contain the following expressions:

"It seems to me that the replacing of a carbon filament in a burned-out electric lamp does not in any manner change the lamp itself, or its constituent parts, any more than replacing the wick in a kerosene lamp; and the opening of the glass bulb and exhausting the air, and resealing it, in order to replace the filament, does not change the construction of the lamp any more, nor to any greater extent, than the removal of the glass chimney from a kerosene lamp, in order to replace a burned-out wick, and then to replace the chimney where it was before."

"The only thing added to the extinguished lamp is a carbon filament, the same as replacing the old burnt-out wick of a lamp by a new one."

They also use the following:

"In the above-described operation of repairing said incandescent electric lamp, every part thereof which existed in it when it was a new lamp, excepting the filament thereof, exists in the repaired lamp, and it is still the same old lamp, excepting the filament."

The suggestion that the worn-out filament in the Edison device stands for the old burnt-out wick of an ordinary lamp is not sustainable. So far from the filament being the mere wick, it is itself essentially the lamp; that is, the electric lamp of Edison. Everything else, the globe and the conductors, are, for this case, only the chimney, the stand, and the opening for inserting the oil or other fluid, found in the ordinary domestic lamp. To make our proposition clear, we refer to the fact that the witnesses use with perfect naturalness the expression "arc lamp," although this has no receiver of glass, no vacuum, and no other detailed incidents of the device in

controversy, nor anything which stands for them. In the first claim of the patent in suit an electric lamp is described, with entire correctness, as "consisting of a filament of high resistance, made as described, and secured to metallic wires as set forth." The analogy fails in essential particulars, and, in failing, suggests a distinction, as already said, which is fatal to the case the analogy was intended to support.

In essence, the filament, duly charged, is the light-giving thing. It can give light without the glass receiver or the vacuum, though it does it better and longer with them. The glass receiver was old and common; the vacuum and the knowledge of its uses were old, though carried forward by Edison's perfected mechanical details; the conductors and all the other elements, named and not named, are subject to the same observation, except only the filament and its use in the relations described. If offered without a filament, the device would be in essence only a manufacturer's blank, from which an electric lamp could be set up, but not the lamp itself. When deprived of its filament, it becomes again a manufacturer's blank. In this respect the device is essentially unlike Woodworth's planing machine, which would commonly and properly be designated as such even without the cutters, although, as the supreme court said, they formed "an essential and distinct constituent of the principle or combination of the invention." We are speaking now, as said before, not of what is the substance in view of the patent law in preparing or construing a claim, but in view of things as things, and of a practical understanding of reparation and reconstruction. There was no express or implied consent that the filament might be renewed, and to renew it, with or without that consent, was as a matter of fact and, in a practical sense, reconstruction. We therefore adopt the language of the court below as follows:

"From the very nature of the Edison invention, I do not see how the glass bulb can be opened and a new filament inserted without making essentially a new lamp."

The business under the patent has been long established, manufacturing about 1,000,000 lamps annually. The fundamental basis of jurisdiction in equity in relation to patent rights and trade-marks is the necessity of protecting established enterprises from the great uncertainty caused by infringements, and by the difficulty of measuring the direct and indirect losses if infringements continue. The business of the defendants below was recently commenced under such circumstances that they must, or ought to, have understood that they would be subjected to the hazards of this litigation. The essential facts, and the validity and construction of the patent in question, are not now in dispute. The inferences to be drawn from those facts appear to the court to be clear. The case, therefore, seems particularly appropriate for an ad interim injunction.

Whatever order may be made on an appeal of this character ought not ordinarily to exclude the court below from its control over an ad interim injunction, and must not ordinarily be construed to have that effect. In the present case, the injunction order does not seem to have been superseded by the appeal. With this explanation,

we adopt for the present the form of order which we find in other circuits.

. Order appealed from affirmed, with costs.

WEBB, District Judge, concurs in the result.