ATWATER et al. v. CASTNER et al.

(Circuit Court of Appeals, First Circuit. June 1, 1898.)

No. 239.

1. TRADE-NAMES—PRELIMINARY INJUNCTION—PUBLIC ACQUIESCENCE.

The word "Pocahontas" having been used by complainant as a trade-name for coal for fully 20 years, with unbroken public acquiescence, and such trade-name having been sustained and its infringement enjoined by the circuit court of another circuit, *held*, that a preliminary injunction was properly granted in the present case.

2. SAME—GEOGRAPHICAL NAMES.

It seems that if a manufacturer, producer, or dealer furnishes goods of such excellent quality, and builds up so extensive a trade, that his trade-name becomes a distinctive appellation of the locality where his business is pursued, he is·not thereby prevented from having a trade-mark right in the name.

3. SAME—PUBLIC ACQUIESCENCE.

That one person, other than complainant, shipped coal marked "Poca-hontas Coal, from the Browning Mines," does not show an interruption of public acquiescence in complainant's use of the name "Pocahontas," but rather, from the use of the qualifying words, supports complainant's ex-clusive use of the unqualified words.

4. SAME—PRELIMINARY INJUNCTION—APPEAL.

When an order granting a preliminary injunction was clearly proper when made, it will not be reversed merely because the circuit court of appeals for another circuit, in a case in which the same party was com-plainant, has since held that the trade-mark cannot be sustained.

5. PRELIMINARY INJUNCTION—AFFIRMANCE ON APPEAL.

The rule as to the effect of a judgment on appeal, affirming an order for a temporary injunction, as stated in Davis Electrical Works v. Edison Electric Light Co., 8 C. C. A. 615, 621, 60 Fed. 276, 282, repeated.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Causten Browne and James M. Morton, Jr., for appellants.

Arthur v. Briesen and Henry E. Everding, for appellees.

Before PUTNAM, Circuit Judge, and WEBB and BROWN, District Judges.

PUTNAM, Circuit Judge. This is an appeal from an order grant-ing a temporary injunction, and relates to an alleged trade-mark or trade-name, "Pocahontas," used in the coal traffic. This has been used for fully 20 years by the complainants below, and their prede-cessors in title, in a very extensive trade, with unbroken public acquiescence, until the controversy out of which this litigation arose in this circuit and in the Fourth circuit. It does not indicate merely that the complainants below are the producers of the coal sold, but quite as much that it is sorted and put on the market under their

implied representation of uniform quality and excellence. In addition to the public acquiescence of which we have spoken, there had been, prior to the injunction order appealed from, an adjudication, in the circuit court in the Fourth circuit, sustaining the claimed trade-mark or trade-name, and enjoining its infringement.

It is said that the complainants' coal, and also the alleged infringing coal, come from an extensive locality, now generally known under the name of "Pocahontas"; and it is claimed that the case, therefore, falls within the rule of Canal Co. v. Clark, 13 Wall. 311, and Mill Co. v. Alcorn, 150 U. S., 460, 14 Sup. Ct. 151. But, even if this were true in a general sense, it would remain to be considered whether the supreme court, in Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 203, 204, 16 Sup. Ct. 1002, was not compelled to a qualification of the broad principle, claimed to have been stated in the cases referred to, as applied to trade-marks and trade-names which have been long and extensively used, and have become widely recognized by the public at large, even when they might not have originated in accordance with the ordinary rules of law. In that case the court found that some qualification of the rule that a word which indicates quality cannot be protected as a trade-mark or trade-name is necessary, at least in some classes of cases; and there is ground for maintaining that this applies with the same necessity to trade-marks and trade-names which represent well-known localities as to those of the character of that in question in that case. We do not, however, find it necessary to decide, at present, whether or not any qualification of that nature would be applicable to the case at bar, because so sharp a question does not now arise. Some of the reasons which render it necessary, under some circumstances, to protect, at least to a qualified extent, a trade-mark of a geographical origin, were given by us in Levy v. Waitt, 10 C. C. A. 227, 61 Fed. 1008, 1012, 10 C. C. A. 227.

The exact rule of Mill Co. v. Alcorn is implied in the following statement, at page 464, 150 U. S., and at page 152, 14 Sup. Ct.:

"The word 'Columbia' is not the subject of exclusive appropriation, under the general rule that a word or words, in common use as designating locality or section of a country, cannot be appropriated by any one as his exclusive trade-mark."

This is explained in the same opinion, at page 465, by citing from Canal Co. v. Clark, ubi supra, the following expression:

"The word 'Lackawanna' was not devised by the complainants. They found it a settled and known appellative of a district in which their coal deposits and those of others were situated. At the time they began to use it, it was a recognized description of the region, and, of course, of the earth and minerals in the region."

It is necessary to recognize carefully the distinction which these expressions imply. Otherwise, a manufacturer, producer, or dealer, who furnishes goods of such excellent quality that they build up so extensive a trade as to give a distinctive name to the locality where it is pursued, would be defeated of the just fruits of his industry and integrity by the very fact of his own meritorious conduct. Therefore, even under the rule as stated in Mill Co. v. Alcorn, ubi supra, and

without the qualification recognized in Singer Mfg. Co. v. June Mfg. Co., ubi supra, the case at bar, as presented to the court below, and also to this court, involves a difficult question of fact, to the effect whether, at the time the trade-mark or trade-name in question was adopted, the word "Pocahontas" was in common use, as designating a known locality, or whether the locality gained its name from the complainants. Therefore the circuit court was not met with a pure question of law, but with a mixed question of law and fact; and, by the well-settled principles touching the granting of temporary injunctions, the court was fully justified in its action by the long and unbroken public acquiescence, without reference to the adjudication in the Fourth circuit to which we have referred.

The defendants below suggest that the acquiescence was not unbroken, as stated by us, because the affidavits show that there was one dealer, Browning, who shipped his coal as Pocahontas coal; but they also show that all such coal was plainly tagged as follows: "Pocahontas Coal, from the Browning Mines." This, so far from interrupting the public acquiescence to which we have referred, supported it by an evident attempt on the part of Browning to bring himself within the rule stated in Singer Mfg. Co. v. June Mfg. Co.

Since the granting of the injunction in the case before us by the court below, and since the appeal to this court and the arguments at bar on the appeal, the circuit court of appeals for the Fourth circuit, in Coffman v. Castner (by an opinion passed down May 3, 1898) 87 Fed. 457, has held that the claimed trade-mark or trade-name, "Pocahontas," cannot be sustained, and has reversed the adjudication of the circuit court to which we have referred, and has remanded the cause to that court with instructions to dismiss the suit. As the complainants in this case were the complainants in the case in the Fourth circuit, it may be that, if this had occurred before the action of the court below, now appealed from, no temporary injunction would have been granted. But, as the injunction was granted before the decision of the circuit court of appeals was announced, the position is radically different. The order was clearly proper when made, and, if the circumstances remained unchanged, we could not reverse it. If the decision in the Fourth circuit were in all respects final, we should hesitate to allow the injunction to continue, especially as the parties complainant are the same in each case. It is, however, not final, as it may be reversed, possibly, on a writ of certiorari from the supreme court. It would not be seemly for the courts in one circuit to grant, dissolve, and, perhaps, renew, temporary injunctions according to varying conditions of litigation in other circuits; so that, as this injunction was clearly proper when granted, our only suitable course is not to interfere with it for any reason now apparent to us.

We, of course, do not mean to limit the usual powers of the court below over the injunction, as, while we accept the usual form of order, we attach to it the qualifications stated by us in Davis Electrical Works v. Edison Electric-Light Co., 8 C. C. A. 615, 60 Fed. 276, 282.

Some incidental matters were brought to our attention by the parties; but we believe all of them are rendered unimportant, in

view of the conclusions which we have stated. As neither party takes from our decision anything substantial, and as the circumstances are without precedent, we are not satisfied that equity requires that the appellants should pay the costs of this appeal. The order appealed from is affirmed, neither party to recover costs of appeal.

Note by the Court. Mills Co. v. Eagle, 86 Fed. 608, which came to hand since our opinion was passed down, fully sustains our suggestions about trade-names of geographical origin.