### NATIONAL PHONOGRAPH CO. v. FLETCHER.

(Circuit Court, E. D. New York. June 9, 1902.)

1. PATENTS—INFRINGEMENT—SALE OF PARTS OF COMBINATION.
    One who solicits and obtains, from dealers, machines the parts of which are covered by patents, and which are not in need of repairs, for the purpose of incorporating therein certain improvements of his own, and then returning them, and in doing so reproduces elements of the combination specifically covered by a patent, infringes such patent.

2. SAME—RECONSTRUCTION OF PATENTED DEVICE FOR SALE.
    A patent covering a combination of parts in a machine is infringed by one who, in concert with dealers in such machines, takes the same, and reconstructs them, substituting new parts for some of those of the patent, changing others, and using some of the old parts in new relations, and then returns the machine to the dealer to be sold as that of the patentee.

3. SAME—PHONOGRAPH REPRODUCERS.
    The Edison patents, Nos. 397,280 and 430,278, relating to phonograph reproducers, *held* infringed; No. 484,584, to the same inventor, also covering specific parts of such producers, *held* not infringed.

In Equity. Suit for infringement of letters patent No. 397,280, issued February 5, 1889, to Thomas A. Edison, for a phonograph recorder and reproducer, No. 430,278, issued June 17, 1890, to the same inventor, for a phonograph, and No. 484,584, issued October 18, 1892, to the same inventor, for a phonograph reproducer. On final hearing.

Dyer, Edmonds & Dyer, for complainant.
Seabury C. Mastick, for defendant.

THOMAS, District Judge. The complainant owns three patents covering reproducers used in the Edison phonograph. The defendant, by circulars, requested owners to send their Edison reproducers,

and promised to return them so improved that they would better perform their functions. The evidence does not show that the reproducers received by the defendant needed repair, although it is inferable that they had been used. Of 1,500 changed, nearly all came from one or two dealers in phonographs and parts thereof. A few were received from individual sources. Hence the defendant did not buy or sell reproducers in the usual way, but, for the purpose of their alleged nicer operation, added labor and material to those owned by others, and for this he was paid. There is no direct evidence that the reproducers refashioned by defendant thereby received increased life or strength. Every reproducer was sold primarily by the complainant; each purchaser paid the complainant a proper tribute. There is no direct evidence that the defendant's traffic has to this time diminished the complainant's sales in number or amount. What, then, did the defendant? He added his improvement wherever owners of reproducers would permit him so to do, and, save in a few instances, returned them to dealers. What did he customarily do in the way of changing the reproducer?

The complainant's and defendant's reproducers are shown in the following figures:

*Edison Reproducer*

*Fletcher Reproducer*

The parts in detail are as follows: 1, the body ring; 2, the clamping or screw ring; 3, the tube plate; 4, the diaphragm; 5, the weight; 6, the weight hinge; 7, the limiting screw; 8, the sapphire arm; 9, the arm pivot; 10, the sapphire; 11, the crosshead; 12, the link. Of these, the only parts covered by any of the combination claims are: 4, the diaphragm; 5, the weight; 6, the weight hinge; 7, the limiting screw for holding the weight in place; 8, the sapphire arm; 9, the arm pivot; 10, the sapphire; 11, the crosshead; 12, the link. The last five constitute the reproducing point, and means for connecting the same to the diaphragm, so as to permit independent and lateral movement of the reproducing point. Some of these parts are not specifically stated in the claims, but are described in the specification, or illustrated diagrammatically.

Patent No. 397,280 covers a combination of the parts above stated, but all the parts fall under the general classification of a diaphragm, a weight or retarding device, the hinge connection between the weight and the rim of the frame, a reproducing point, and means for connecting the reproducing point with the diaphragm so as to permit independent and lateral movement of the reproducing point.

Patent No. 430,278 is thus described in the letters:

"This invention relates to the recording and reproducing points of the phonograph, and has for its objects such an improvement in the form and construction of such devices, and in the manner of arranging and supporting the same, as, in the first place, to materially improve the character of the sounds produced by the instrument, so as to make them more accurately reproduce the sound vibrations communicated to the recorder than has heretofore been found possible; secondly, to make the instrument of a less delicate character, and more readily manipulated and adjusted by inexperienced persons; and, thirdly, to enable the recording point to be used for a longer period of time without having to be sharpened or reground or replaced by another."

No. 9 of these claims provides for the combination of a recording or reproducing point having a shank or extension, and a sleeve for holding the same; No. 11, for a reproducing point whose bearing surface is the surface of a portion of a sphere; No. 12, for a spherical reproducing point; No. 15, for a reproducing point pivoted so as to have a lateral movement in connection with a weight bearing thereon; No. 16, for a reproducing point having a bearing surface, which is the surface of a portion of a sphere, and pivoted so as to have a lateral movement, in combination with a weight bearing thereon; No. 17, the same as No. 16, without mention of the weight; No. 18, for a laterally rocking, spherical, reproducing point, in combination with a weight bearing thereon; No. 20, for the combination of the reproducing point, the lever carrying the same and connected with the diaphragm, the hinged plate, and the hinge connection between the said lever and said plate; No. 22, for a recording point having a cylindrical head provided with a cutting edge and a shank or extension; No. 29, for the combination of a diaphragm, a lever connected therewith, a sleeve carried by said lever, and a recording or reproducing point removably held in said sleeve.

Counsel for defendant states, after citing patent No. 430,278:

"It therefore appears that the ball-shaped or spherical reproducing point is the essential part or element of the device set forth in patent No. 430,278, the

secondary elements or parts being the means of mounting the point on the lever and the means of supporting the lever, so that it has a slight movement laterally of the record. That this conclusion is correct is readily shown by a perusal of the patent and by the statement of the inventor [page 1, line 9]: 'This invention relates to the recording and reproducing points of the phonograph.' "

Patent No. 484,584 provides for improvement in phonograph reproducers, as follows: Claim 1. The combination, in a phonograph, with a phonograph blank of wax-like material, of a jewel reproducer. Claim 2. The combination, with a phonogram blank, of a rounded jewel reproducer. Claim 3. For a reproducer or bearing point for phonographs, consisting of a jewel not affected by chemicals, or chemical action, of the wax-like material of the phonogram blank. This patent does not seem to be infringed, as the part was in every instance supplied primarily by the complainant.

With such survey of the parts of the several patents, the defendant's changes in the same may be considered. 4, diaphragm. The diaphragm proper is retained, but its associated tube plate is changed. The Edison tube plate (not an element in the patented combination) is flat, and is close to the glass, with a large opening at the center, while Fletcher's tube is made with a space or sound chamber at the bottom of the central opening, where is placed a plate or resonator with openings at the outer edge, which improves the volume and tone of sounds, as defendant claims. Such plate is inscribed, "The Fletcher. Pat. Applied For." 5, the weight. The original plate is retained except in 25 instances, where recorders from the Edison phonograph were substituted, as shown in Fletcher's reproducer No. 1. The weight has a slot for a different kind of lever or arm for carrying the sapphire point, and also is given a larger bushing to engage the head of the limiting screw, so as to permit of greater movement, and is attached by a hinge essentially different. 6, the weight hinge, obviously, is of a different type, and has, as claimed, a better action. 7, the limiting screw is renewed, and in its bushing permits greater movement of the weight. 8, sapphire arm discarded, and another substituted. The defendant testified: "I place in this slot [in the weight] my sapphire arm, which has a double-pointed pin running through one end of it; these points are held in position by the bushings which are placed in the groove." 9, arm pivot. Edison's discarded, and another substituted. 10, the sapphire retained, and placed in the substituted sapphire arm. 11, the crosshead. Edison's discarded, and Fletcher's substituted. 12, the link. Fletcher's link substituted.

From this it appears that the only parts retained are the diaphragm, the weight, and the sapphire point; that the diaphragm is associated with a tube plate different in form; that the weight is held by a different hinge and limiting screw, and has a different bushing and slot; that the other parts of the combination are all substituted, and made from new material, and after different designs, but in every case within some of the patents. From the foregoing it is observed that there is no occasion for repairs, and hence the law relating to that subject has no specific application. The defendant receives reproducers, usually from dealers, for the purpose of return-

ing them with his improvements. Therefore, the question is whether a person may receive reproducers needing no repairs, place his improvement thereon, and return (1) with a substitution, change, or change of relation, of every part; (2) with a specifically patented part of the combination reproduced and readjusted. As to the renewal of the patented parts, there is no doubt of infringement, in view of the decisions. Davis Electrical Works v. Edison Electric Light Co., 8 C. C. A. 615, 60 Fed. 276; Aiken v. Print Works, 2 Cliff. 435, Fed. Cas. No. 113. In Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 433, 14 Sup. Ct. 631, 38 L. Ed. 500, it was stated with reference to the manufacture and sale of a single element of a combination, with intent that it should be united to the other elements so as to complete the combination: "Of course, if the product itself is the subject of a valid patent, it would be an infringement of that patent to purchase such product of another than the patentee." This rule has been recognized even in cases where infringement has not been decreed. Wilson v. Simpson, 9 How. 123, 13 L. Ed. 66. This phase of the case requires no further discussion; hence, the first finding is that the defendant, by creating anew the reproducing point, and means for connecting it with the diaphragm, violates patent No. 430,278. No effort was made by the defendant to show that any particular claim alleged to be infringed was not, but the general contention was that no part of the patent was infringed. All the claims pointed out seem to be infringed, and it will be so adjudged.

The final inquiry relates to the infringement of patent No. 397,280, which covers the combination of parts. The modification, substitution, and change of relation of parts, passes the limit of allowable repairs. Reproduction, not restoration, is intended, for there is no occasion for restoration. Every vital part except the sapphire, diaphragm and weight is renewed, but the weight is the same only in its material; the sapphire is reset in an entirely new arm, whose detailed parts are unlike the original, and the diaphragm is associated with a tube plate quite dissimilar to that of Edison. If the defense were the right to repair, it could not be maintained, for no one acquainted with the appearance of the Edison reproducer could easily discover it in Fletcher's reproducer. Viewed superficially or critically, recognition is confused, if it does not absolutely fail. The reproducer is a delicate instrument adapted to the successful operation of a novel machine. The inventor has received the privilege of selling and having his machine used. The defendant's broad claim is that he may take these reproducers, with all their parts, and refashion or reassociate the parts, so that his creation and that of Edison are blended, and concert with dealers for their sale as Edison's genuine device; that is, the defendant claims the right to gather up all of the complainant's output, recast the same, subtract what he will, add his own parts, good or bad, and put afloat again as the patented product, simply because he uses some of the original parts, each in itself unchanged. If patented machines may be refashioned to suit every skilled or unskilled improver, and marketed as originals with "Fletcher's Improvement," the inventor is at the disadvantage of

having numberless coadjutors, whose association he does not invite, and whose improvement may mar the action, merit, or fame of the original device. The improver obtains the benefit of the patent without returning, it may be, equal benefit, and the inventor's goods are on the market in any and every form, good and bad. The whole suggestion seems vicious and unconscionable.

There. is nothing in the law relating to repairs, as stated in Machinery Co. v. Jackson, 50 C. C. A. 159, 112 Fed. 146; Thomson-Houston Electric Co. v. Kelsey Electric Ry. Specialty Co., 22 C. C. A. 1, 75 Fed. 1005, and kindred cases, that justifies such use of the patented article. It is true that in Chaffee v. Belting Co., 22 How. 217-223, 16 L. Ed. 240, the court states that a purchaser "may repair it or improve upon it, as he pleases, in the same manner as if dealing with property of any other kind." This decision goes no farther than this; that an individual owner may do what he will with a patented machine or article which is his property. If it be a patent medicine, he may combine it with other substance, and use it, thus improved, for his own peculiar purposes. The experiment is at his own peril. But if he advertise it for sale after such dilution, as the inventor's medicine with improvements, or turn it over to jobbers for sale, he may be destroying the merit of a patented article, and substituting something of his own compounding. What a man may do for his own use, with property made pursuant to a patent, is not what he·may do for the purpose of selling as another's patented article. Hence, it is considered that the defendant's traffic involves placing Edison's reproducers on the market hampered with alleged improvements which may discredit Edison's invention, and thereby injure complainant's business, which improvements conceal or obliterate the identity of the original reproducer. In their physical being and fashioning of parts, the Edison reproducers are not "Fletcherized" reproducers, as the defendant terms them, when improved, and the complainant is entitled to a decree protecting it from a reproduction of its patented articles under the peculiar and harmful conditions stated.