UNION SPECIAL MACH. CO. v. MAIMIN.

(Circuit Court, E. D. Pennsylvania. May 12, 1908.)

No. 26, October Sessions, 1904.

1. PATENTS—CONTRIBUTORY INFRINGER—REPAIR OF INFRINGING DEVICE.

A repairer who supplies an essential part of the patented combination for an infringing machine thereby becomes a contributory infringer.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 400–402.

For other definitions, see Words and Phrases, vol. 2, p. 1540.]

2. SAME.

The infringement of a patent initially by one person gives no sanction to another to repeat or continue. No doubt within certain bounds a patented article may be repaired without making the repairer an infringer; but not where it is done for one who is. It is only where the device in patented form has come lawfully into the hands of the person for or by whom it is repaired that this is the case. In other words, if one without right constructs or disposes of an infringing machine, it affords no protection to another to have merely repaired it; the repairer, by supplying an essential part of the patented combination, contributing by so much to the perpetuation of the infringement.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 399·402.

3. SAME—SECONDHAND SEWING MACHINES.

Complainant was the owner of a patent for a thread-controlling device for sewing machines, and manufactured and sold machines both with and without such device. Certain machines sold by it without the device were bought at secondhand by defendant, equipped by him with the device, and resold an additional eyelet necessary for such equipment having been purchased from an agent of complainant. Similar eyelets were of common use on sewing machines for a different purpose, and the use for which those bought by defendant were intended was not stated. Whether such machines had previously been equipped with the patented device by another than defendant did not clearly appear. *Held*, that whether they had or had not been so equipped was immaterial, and that in either case defendant was an infringer, as no license to make or use the patented device could be implied from the sale of the part by complainant under the circumstances.

4. SAME—INVENTION—THREAD-CONTROLLING DEVICE FOR SEWING MACHINES.

The Woodward patent No. 493,461, for a thread-controlling device for sewing machines, the purpose of which is to prevent the breaking of the thread when sewing material of uneven thickness, and at the same time secure a uniform tension of the thread when the stitch is completed, was not anticipated, and discloses patentable invention.

In Equity. Suit for infringement of letters patent No. 493,461 for a thread-controlling device for sewing machines, granted to Russell G. Woodward, assignor, March 14, 1893. On final hearing.

Joseph C. Fraley and C. L. Sturtevant, for complainants.
Hector T. Fenton, for defendant.

ARCHBALD, District Judge.[1] The patent which the defendant is charged with infringing is for a thread-controlling device for sewing machines, designed to better regulate the feeding of the thread,

[1] Specially assigned.

and particularly to prevent its breaking when an extra thickness of material is encountered by reason of seams or otherwise. "Heretofore," says the inventor, "in the use of such devices, in machines employing a looper in connection with the needles, when sewing more than a certain predetermined thickness of leather or other material the strain upon the thread, as the looper backs out over the point, becomes too great, and the stitch either becomes too tight, or the thread breaks. Furthermore, with devices such as heretofore used, the thread may have too much slack at a certain portion of the movement of the machine, and not enough at another." To obviate these difficulties, instead of a single thread eyelet on the needle arm, which by experience has been found particularly open to objection, two such eyelets are employed, one located at the point of the arm which rises highest in the upward movement of it, and the other at a point in front or advance of this, towards the needle bar, both being in between a stationary eyelet on the frame, which receives the thread as it comes from the tension device, and the customary eyelet on the top of the needle bar. The operation is this: In rising to the highest position above the frame, the rear of the two eyelets produces an angle or crook in the thread between the eyelet on the frame and the forward eyelet on the needle arm, and thus pulls off an extra quantity of thread, thereby giving a sufficient length to let the looper back out of the loop in the descending movement of the needle, the slack which would otherwise be left undisposed of being taken up in turn by the forward eyelet after the point of the looper is freed from the loop, the loop at the same time being drawn up against the material so as to make a tight stitch, all this being accomplished without any breaking strain. Or, in other words, if I may venture a somewhat free description, the extra thread is first pulled off by an angle or crook formed by the rear eyelet in the upward movement of the needle arm, which by an ingenious adjustment is taken up by the forward eyelet in the downward movement, the crook or slack being transferred from the one to the other, the thread from the eyelet on the frame, through the rear eyelet on the needle arm, to the forward eyelet at its lowest position, in the end forming a straight line. This arrangement is especially useful in double or twin needle machines for which the complainants formerly held a patent which has now expired.

The defendant is a dealer in secondhand machines which he buys in the market, and, after making any needed repairs, sells again. He so bought and disposed of the two machines as to which infringement is charged, supplying and putting on them the rear eyelet which was lacking in each, which he purchased for 10 cents from the complainants' Philadelphia agent. Eyelets of this general character are found on almost every style of machine, and, except as it was understood that they were to be used to repair one of the complainants' machines, nothing was said by the defendant at the time of purchasing those in question to indicate the use to which they were to be put. It is contended by the complainants that, in equipping these machines in the way he did, the defendant was guilty of infringement; the machines being thereby effectively supplied with the thread-

controlling device of the patent which they otherwise lacked. To this two answers are made: (1) While the defendant put on the second eyelet by which this was brought about, he did not do it initially, but simply by way of repair; and (2) that, even if he did, the complainants themselves, by their agent, supplied the means for doing so, thus impliedly licensing it. The records kept by the complainants show that, when the machines in question left the company's hands, they were single-needle machines, on which a needle controller is not put because there is no particular necessity for it. Some one since that time has therefore changed them to two-needle machines, and put on thread controllers to match. And whether this in the first instance was done by the defendant or some one else is not material; the infringement of a patent initially by one person giving no sanction to another to repeat or continue it. No doubt, within certain bounds, a patented article may be repaired without making the repairer an infringer (Morrin v. Robert White Engineering Works [C. C.] 138 Fed. 68), but not where it is done for one who is. It is only where the device in patented form has come lawfully into the hands of the person for or by whom it is repaired that this is the case. In other words, if one without right constructs or disposes of an infringing machine, it affords no protection to another to have merely repaired it; the repairer, by supplying an essential part of the patented combination, contributing by so much to the perpetuation of the infringement. The evidence here is that the defendant merely put on the rear eyelet of the thread controller; the screw hole in the needle arm where it is attached having already been drilled for it when he got the machine. These holes in the opinion of Mr. Straub, who has charge of the defendant's shop, were drilled in each case before the arms were japanned and tapped out afterwards to clean them out; the intimation being that this was therefore done when the machines were originally built. But this is a mere opinion from an examination of the hole, and the reasons given for it are not strong. It is not at all likely that the holes would be drilled through the gilt lettering as they are, if this was the case; this lettering being necessarily put on after the japan. It is not to be accepted, moreover, in the face of the positive evidence, already alluded to, that the machines were not in this condition when they left the complainant's hands. The eyelets were therefore put on by some one without right, and as so equipped the machines were infringements, of which the defendant in repairing them took the risk. It is said, however, that the evidence as to the original condition of the machines from the books of the company was not competent, but to this I cannot agree; also, that it should have been introduced in chief, and was not admissible in rebuttal, but that merely goes to the order of proof, which it is at the discretion of the court to allow.

It is further urged that the complainants, by supplying the eyelets put on by the defendant, impliedly sanctioned their use. This would be true if there was but one purpose for which they could be employed. But eyelets of this character are common on sewing machines, and the complainants in supplying them to buyers, unless there is something at the time to indicate to what use they are to be

put, do not commit themselves to anything in particular thereby. In their catalogue two such eyelets are shown, somewhat alike in appearance, but having certain differences, as it is claimed, the one being designated as a needle lever thread-eyelet, and the other as a thread-eyelet for the thread controller. The latter is the one which forms a part of the patented device, while the former, according to the evidence, was the one called for and sold, which entirely relieves the complainants from any implication of a license. But, even if this were not so, and simply an eyelet for an unspecified purpose was called for, being capable of an innocent as well as an infringing use, no authority to employ it in a way that would infringe is to be made out from parting with it as they did. Roosevelt v. Western Electric Co. (C. C.) 20 Fed. 724; United Nickel Co. v. California Electrical Works (C. C.) 25 Fed. 475; American Graphophone Co. v. Amet (C. C.) 74 Fed. 789; National Phonograph Co. v. Fletcher (C. C.) 117 Fed. 149; National Cash Register Co. v. Grobet, 153 Fed. 905, 82 C. C. A. 651.

It is contended, however, that the patent is invalid, the device having no utility, and involving nothing either novel or inventive. There is no occasion to stop long over the question of utility. Notwithstanding the denial of the defendant's witnesses, not only does it apparently perform the work claimed for it, but, if that is not so, it is difficult to see why the defendant has been at such pains to copy it. The question whether there is anything inventive is not so easily disposed of. The Muther (1886) patent, mentioned in the specifications, which is the closest reference, shows a stationary eyelet on the frame, and another on the needle arm at the same place as the forward eyelet of the patent, the present invention differing from it simply in the insertion of another on the needle arm between the two. It must be confessed that this seems a small thing on which to claim a patent, but I am not prepared to say that it is not sufficient. The simplicity of the device is not necessarily against it, particularly when it is contrasted with the cumbersome and complicated arrangements found in others which are dispensed with. It is the function to be performed and the end to be attained that have to be looked to. The feed and control of the thread is an important matter in the running of a sewing machine, and the ingenuity of different inventors has been directed to it and variously exercised. Nor is the invention here to be characterized as merely putting on another eyelet, but consists in attaching it at such a place that it shall operate to a certain end, in a certain way. Not only by producing a crook or bend in the thread between the tension device and the needle arm does the relative arrangement of the several eyelets pull off just so much more thread, thus supplying a needed slack in case of encountering an extra thickness of material such as the ridge of a seam; but this slackness is, in turn, taken up by the action of the forward eyelet as the needle arm descends, keeping the thread taut and securing a tight stitch. And all this is so timed as to co-operate with the action of the looper or under-thread carrier, as it is shot back and forth, into and out of the looper, at incredible speed, below the bedplate. That the ingenuity, which has accomplished this, by the simple de-

vice employed, is beyond the ordinary mechanic to provide, is clearly shown by the contrary views expressed with regard to it by the two skilled workmen called by the defendant, one of whom is in charge of the defendant's shop and the other has served as a sewing machine adjuster for a number of years; the one declaring that no useful purpose is served by the rear eyelet on the needle arm, for the reason that no more thread is taken off when it is used than when it is not, and the other coinciding in this condemning view, because in his opinion too much thread is taken off, causing it to break. With the problem all worked out before their eyes, they thus are not able either to appreciate the advantage of the contrivance or to agree upon how it works, most effectively disposing of the contention that it was within the range of the ordinary workman, familiar with the art, to see the necessity for it and supply the means. No doubt nothing broadly new is to be expected with regard to sewing machines. But it does not follow that the whole inventive field has been exhausted as to the different parts and appliances which make for greater efficiency, of which the present device is one. Unquestionably, also, the invention is not large, but, as already stated, it has so commended itself to the public that the defendant feels called upon to see that his machines are equipped with it, and, if so, it may well be accepted as having contributed something both new and useful to the art.

Let a decree be drawn in favor of the complainants in the usual form, with costs.