### EDWIN M. CHAFFEE, PLAINTIFF IN ERROR, *v.* THE BOSTON BELT-ING COMPANY.

Where a patentee, whose patent had been extended according to law, conveyed all his interest to another person, and the assignee brought suit against cer-tain parties for an infringement of the patent, and these parties claimed, under a license granted by the original patentee before the assignment, it was necessary to show a connected chain of title to themselves, in order to justify their use of the improvements secured by the patent.

Having omitted to do this, the judgment of the court below, which was in favor of the defendants, must be reversed, and the case remanded for another trial.

Whether the patent was for a process or a machine, is not decided in the present case.

THIS case was brought up by writ of error from the Circuit Court of the United States for the district of Massachusetts.

It was an action of trespass on the case brought by Chaffee against the Boston Belting Company, for an infringement upon a patent granted for the manufacture of India-rubber, granted to Chaffee in 1836, and extended for seven years from the 31st day of August, 1850.

The respective claims of the plaintiff and defendants are fully stated in the opinion of the court.

The presiding judge in the court below ruled that the defendants had a right to continue the same machinery for the same purposes, and in conformity with the directions contained in the specification, after the expiration and renewal of the letters patent, and, consequently, that the plaintiff could not recover.

To this ruling the plaintiff excepted, and brought the case up to this court.

It was argued by *Mr. Jenckes* and *Mr. Clarence A. Seward* for the plaintiff in error, no counsel appearing for the defendants.

The case having gone off upon a single point, the argument of the counsel for the plaintiff in error upon that point is alone reported.

The court below erred in charging the jury, that, under their title, the defendants had a right to continue to use the same machinery for the same purposes. This charge was predicated upon an assumption of title in the defendants, which they had not proved. They had proved that Goodyear, while the owner of the original term of the patent, had granted to Edwards a license for a specific purpose. They did not prove any privity between themselves and that license. They did not prove an assignment of that license to themselves. They did not prove the assent of Edwards to their use of the plaintiff's patent in the manufacture of the articles specified in the license. The only purpose for which the license seems to have been introduced was to identify the uses to which the defendants applied the plaintiff's patent, to wit: "for the preparation and application of India-rubber to the manufacture of the articles mentioned and described in the indenture between Goodyear and Edwards." This identification was not a justification of the use, by the defendants, of the plaintiff's patent. It proved satisfactorily the nature and extent of that use; but it proved nothing more. It did not prove that the defendants were rightfully in the enjoyment of the thing patented, during the original term of the patent.

The defendants, therefore, having failed to establish any privity between themselves and Goodyear, the owner of the original term of the patent, failed also to establish any right, as against the plaintiff, to use his patent during its extended term. The defendants, upon the record, appear as naked infringers of the plaintiff's patent.

The charge of the court below, therefore, was erroneous in assuming the existence of a license from Goodyear to the defendants, and entitles the plaintiff to a reversal of the judgment and to a *venire facias de novo.*

Mr. Justice CLIFFORD delivered the opinion of the court.

This case comes before the court on a writ of error to the Circuit Court of the United States for the district of Massachusetts. It was an action of trespass on the case, for the alleged infringement of certain rights secured by letters patent.

As the foundation of the suit, the declaration alleges, in effect, that the assignor of the plaintiff was the original and first inventor of certain improvements in the manufacture of India-rubber, and that in the year 1836 letters patent for such improvements were duly issued to him by the Commissioner of Patents, as is therein fully and correctly set forth and described.

Those improvements, as is alleged in the declaration, consist in a mode of preparing the rubber for manufacturing purposes, and of reducing it to a pasty state, without the use of the spirits of turpentine or other solvents, and of applying the same to cloths, and for other purposes, by the use of heated rollers and other means, as set forth in the letters patent, saving thereby, as is alleged, a large portion of the expense of reducing the original material to a proper degree of softness, and of fitting and preparing it for the various uses to which it may be applied.

On application subsequently made to the Commissioner of Patents, in due form of law, by the original inventor, the patent was extended for the further term of seven years, from the thirty-first day of August, 1850; and the plaintiff alleges that the patentee, on the first day of July, 1853, transferred,

assigned, and conveyed to him all his title to the invention and to the patent for the extended term.

By virtue of that deed of transfer, it is claimed in the declaration that the plaintiff acquired the right to demand and recover the damages for all infringements of the letters patent prior to the date of the transfer, as well as for those that have been committed since that time; and, accordingly, the plaintiff alleges that the defendants, on the thirty-first day of August, 1850, fraudulently commenced the use of those improvements, without law or right, and so continued to use them to the day of the commencement of this suit; averring, at the same time, that the defendants have prepared large quantities of the native rubber for manufacturing purposes, without the use of spirits of turpentine or other solvents, thereby making large gains, and greatly to the damage of the plaintiff.

As appears by the transcript, the action was entered in the Circuit Court at the May term, 1854, but was continued from term to term until the May term, 1857, when the parties went to trial upon the general issue.

From what is stated in the bill of exceptions, it appears that one Charles Goodyear was the owner of the original letters patent on the twenty-sixth day of January, 1846, and that he continued to own them for the residue of the term for which they were originally granted. On that day he entered into an indenture with one Henry Edwards, of the city of Boston, whereby, for certain considerations therein expressed, he sold and conveyed to the said Henry Edwards, his executors, administrators, and assigns, the exclusive right and license to make, use, and vend, any and all articles appertaining to machines, or in the manufacture, construction, and use of machines or machinery, of whatever description, subject to certain limitations and qualifications therein expressed.

By the terms of the instrument, it was understood that the right and license so conveyed was to apply to any and all articles substituted for leather, metal, and other substances, in the use or manufacture of machines or machinery, in so far as the grantor had any rights or privileges in the same, by virtue of any invention or improvement made or which should there-

after be made by him in the manufacture of India-rubber oɪ gum-elastic goods, and in virtue of any and all letters patent or patent rights of the United States granted or belonging to him, or which should thereafter be granted or belong to him, for any and all inventions or improvements in the manufacture of such goods in this country, but excluding the right to make any contract with the Government of the United States. In consideration of the premises, the grantee paid the sum of one thousand dollars, as appears by the recital of the instrument, and agreed to pay a certain tariff, at the rate of five cents per superficial yard, or five cents per pound for the pure gum, according to the nature of the article manufactured.

Reference is made in the declaration to the letters patent, and to the deed of assignment from the patentee to the plaintiff, but neither of those instruments appears in the bill of exceptions or in any other part of the record.

At the trial of the cause, it was conceded and agreed that the defendants, before the date of the plaintiff's writ, used certain machinery, constructed in conformity with the specification annexed to the letters patent declared on, and that the defendants, in using the machinery, conformed to the directions contained in the specification, and that the same was so used for the preparation and application of India-rubber to the manufacture of the articles mentioned and described in the indenture from Charles Goodyear to Henry Edwards, and that all the machinery so used was constructed and in use as aforesaid before and at the time the original letters patent expired.

Upon this state of the case, according to the bill of exceptions, the presiding justice ruled and instructed the jury, that, under their title, the defendants had the right to continue to use the same machinery for the same purposes, and in conformity with the directions contained in the specification, after the expiration and renewal of the letters patent; and consequently, that the plaintiff could not recover.

Under the ruling and instruction of the court, the jury returned their verdict for the defendants; and the plaintiff excepted to the ruling, and his exceptions were duly allowed.

It is insisted by the counsel of the plaintiff, that the in-

struction given to the jury was erroneous; and that is the only question presented for decision at the present time. In considering that question, our attention must necessarily be confined to the evidence reported in the bill of exceptions, as the only means of ascertaining the precise state of facts on which the instruction to the jury was given. Whether the report of the evidence, as set forth in the bill of exceptions, may or may not be incomplete, or imperfectly stated, cannot be known in an appellate court. Bills of exception, when properly taken and duly allowed, become a part of the record, and, as such, cannot be contradicted.

By the admission of the parties in this case, it appears that the defendants, before the date of the plaintiff's writ, had used certain machinery, constructed in conformity with the specification of the plaintiff's patent. In the absence of any explanation or suggestion to the contrary, it must be inferred that the use of the machinery so admitted was without the license or consent of the plaintiff, and subsequent to the period when he became the owner of the patent for the extended term; and if so, the admission was sufficient, under the pleadings, to make out a *prima facie* case for the plaintiff. To maintain the issue on their part, the defendants proved in effect, or it was admitted, that all the machinery so used by them had been constructed, and was in use, as aforesaid, before and at the time the original letters patent expired, and that in using the machinery they had conformed to the directions contained in the specification, and that the same was so used for the purposes and in the manufacture of the articles specified and described in the before-mentioned indenture. As before stated, they had previously proved, or it had been admitted, that the owner of the original term of the patent had granted the exclusive right and license to a third party to use the invention for the same purposes for which the defendants, both under the original and extended term of the patent, had used their machinery; but they did not prove, and there is no evidence in the case to show, any privity between themselves, and that license, either by assignment or in any other manner. They offered no proof tending to show

that their use of the machinery in question, under either term of the patent, was with the license, consent, or knowledge. of the patentee, or of any other person who ever had or claimed to have any power or authority under him to convey the right. Provision is made by the eighteenth section of the act of Congress, passed on the fourth day of July, 1836, for the extension of patents beyond the time of their limitation, on application therefor, in writing, by the patentee, to the Commissioner of the Patent Office, setting forth the grounds for such extension. By the latter clause of that section, the benefit of such renewal is expressly extended to assignees and grantees of the right to use the thing patented to the extent of their respective interests therein. 5 Stat. at Large, p. 125. Under that provision, it has been repeatedly held by this court, that a party who had purchased a patented machine, and was using it during the original term for which the patent was granted, might continue to use the machine during the extended term. Bloomer *v.* McQuewan et al., 14 How., 549; Wilson *v.* Rosseau, 4 How., 646. That rule rests upon the doctrine that the purchaser, in using the machine under such circumstances, exercises no rights created by the act of Congress, nor does he derive title to it by virtue of the franchise or the exclusive privilege granted to the patentee.

When the patented machine rightfully passes to the hands of the purchaser from the patentee, or from any other person by him authorized to convey it, the machine is no longer within the limits of the monopoly. According to the decision of this court in the cases before mentioned, it then passes outside of the monopoly, and is no longer under the peculiar protection granted to patented rights. By a valid sale and purchase, the patented machine becomes the private individual property of the purchaser, and is no longer protected by the laws of the United States, but by the laws of the State in which it is situated. Hence it is obvious, that if a person legally acquires a title to that which is the subject of letters patent, he may continue to use it until it is worn out, or he may repair it or improve upon it, as he pleases, in the same manner as if dealing with property of any other kind. Apply-

ing these principles to the present case, as it is exhibited in the bill of exceptions, there would be no difficulty in sustaining the instructions given to the jury, provided it appeared that the machinery used by the defendants had been legally purchased by them of the patentee or his assigns during the original term of the patent. But nothing appears in the evidence reported to warrant the inference that they were either assignees or grantees of the thing patented, within the meaning of the act of Congress or the decisions of this court. All that the indenture offered in evidence showed was the nature and extent that the defendants had used the invention, but, as is well contended by the counsel for the plaintiff, it proved nothing more. It did not prove, or tend to prove, that the defendants were rightfully in the enjoyment of the thing patented during the original term of the patent, and having failed to establish any right or license to use their machinery during the extended term by any other proof, they appear in the record as naked infringers.

Their right to continue to use the machinery as against the plaintiff is predicated in the instruction upon the assumption that they had a title to it, and were rightfully in the use of it under that title, before and at the time the original letters patent expired. That assumed fact finds no support in the evidence reported. It is clearly error for the court, in its instruction to the jury, to assume a material fact as proved, of which there is no evidence in the case. United States v. Breitling, 20 How., 255. And when the finding of the jury accords with the theory of the instruction, thus assumed without evidence, the error is of a character to deserve correction.

Another position is assumed by the counsel of the plaintiff, which ought not to be passed over without a brief notice. They contend that the invention of the plaintiff, as described in the letters patent, is for a process, and not for a machine or machinery; and that the act of Congress, extending the benefit of renewals to assignees and grantees of the right to use the thing patented, when properly construed, does not include patents for a process, but should be confined to patents for machines. That question, if properly presented,

would involve the construction of the letters patent in this case, as well as the act of Congress; but as the patent is not in the record, it is not possible to determine it at the present time, and we only advert to it that it may not appear to have escaped attention.

The decree of the Circuit Court is reversed, with costs, and with directions to issue a new *venire.*