ELIAS HOWE, JR. & another *vs.* JOHN WOOLDREDGE & others.

The patentee of an improvement in sewing machines granted a license to A. to make, use and vend such machines, by a written contract, in which A. promised, as compensation therefor, and for the purpose of avoiding all controversy and litigation on questions of infringement, to pay a certain sum in quarterly payments "for each and every sewing machine of every name and nature whatsoever, that shall hereafter be made, used or sold" by him during the continuance of the contract. It was also provided that all the machines made, used or sold under the license should be numbered in regular order, and stamped; and should be sold to be used in some certain locality; and quarterly returns made to the patentee; and that the patentee would not, during the continuance of the contract, license others on more favorable terms without giving notice to A. and making a corresponding deduction in the price paid by him. The patentee afterwards granted a license to B. on the same terms, with the additional provision that whenever the regular quarterly payments stipulated for should wholly cease, the license should also cease. A. subsequently purchased from B. a number of the machines made and numbered by B., and sold them again. Neither A. nor B. ever made any return of them to the patentee, or paid any royalty for them. *Held*, that the patentee could not maintain an action against A. to recover the royalty.

CONTRACT brought to recover license fees or royalties of ten dollars apiece on one hundred and ninety-two sewing machines sold by the defendants. At the trial in the superior court, before *Wilkinson*, J., the following facts were admitted:

On the 1st of September 1853 the plaintiffs and the defendants executed an agreement in writing, which recites that the plaintiffs have obtained letters patent of the United States, granted September 10th 1846, for a new and useful improvement in sewing machines, known as Howe's Patent Sewing Machine, and "by virtue of their right and title in and to said patent and the invention thereby secured have full power to grant valid licenses to make, use and vend said machines" in the United States and the territories thereof, and that the defendants "desire to obtain such license;" and by which, in consideration of the premises, and of the agreements thereinafter made by the defendants, the plaintiffs "sell, grant and convey to" them "the right and license under said patent to make, use, and vend to others to be used, sewing machines embodying the whole or any part of the invention patented by said Howe as aforesaid," upon the following terms and conditions:

ART. 1. "Said licensees shall not manufacture said machines

at more than three separate places at any one time," all which shall be in New England or the eastern part of New York, and shall during all business hours be open to the inspection of the plaintiffs.

ART. 2. " All the machines which shall be made, used or sold by the said licensees or either of them under this license shall be numbered in regular order, beginning with number one, and each and every machine shall have its appropriate number stamped upon it in a conspicuous and durable manner, and shall also have stamped upon it in like manner the words and figures following, to wit, ' Howe's Patent, Sept. 10th 1846.' "

ART. 3. " Every machine hereafter sold by the said licensees shall be sold to be used in some certain locality," to wit, some specific city, village, township or county, except those sold west of the Rocky Mountains, which may be for a state or territory; " provided however that the said licensees shall have the right to change the locality of any machine so sold to any other locality included in this license by giving immediate notice in writing to " the plaintiffs " of such change."

ART. 4. " The said licensees shall during the continuance of this contract keep in a book for that purpose a true account of all the machines that shall be made, used or sold by them, giving the number of each machine, the date of the sale, the name and residence of the purchaser, and 'the authorized locality of the use thereof," to be open to the inspection of the plaintiffs, and transcripts thereof furnished to them quarterly.

ART. 5. The defendants, " in consideration of the license herein granted to them and as a compensation therefor, and also in consideration of the other agreements of " the plaintiffs " herein contained, and for the purpose of avoiding all controversy and litigation or questions of infringement while this contract shall continue in force," promise and agree to pay to the plaintiffs " for each and every sewing machine of every name and nature whatsoever that shall hereafter be made, used or sold by them the said licensees, or either of them, or their assigns during the continuance of this contract, the following sums, to wit, ten dollars on each and every machine of the first thousand

machines made, used or sold by them," &c., in quarterly payments.

ART. 6. The plaintiffs agree that " they will not during the continuance of this agreement license others under said patent upon more favorable terms than are herein contained," without giving immediate notice to the defendants, and making a corresponding deduction in the price paid by them.

ART. 7. The plaintiffs agree to warrant and defend this license against all persons claiming under the patent, and that the license shall be good and valid against any future amendment of the patent.

ART. 8. The plaintiffs will use all means to sustain the validity of the patent and protect it from infringement; and the defendants will not during the continuance of this license contest the validity of the patent.

ART. 9 provides that the infringement by the defendants of any patent, heretofore granted for improvements in sewing machines, and owned by any licensee under this patent, shall operate as a forfeiture of this license ; and for the submission of the question of such infringement to arbitration.

ART. 10. All the rights, privileges, benefits and advantages hereby granted, promised or secured to the parties, shall enure to and be held and enjoyed by, and all the duties, conditions, liabilities, restrictions and obligations, imposed upon or assumed by them shall be imposed upon, assumed and enjoyed by, their respective heirs, executors, administrators and assigns ; but the defendants shall have no power to assign any of their rights under this contract, without the written consent of the plaintiffs or their representatives.

ART. 11. The defendants and their assigns fulfilling this contract on their part, it is to continue in force during the residue of the term of the patent, unless sooner terminated by them by giving notice to the plaintiffs and paying all sums due under it.

On the 1st of July 1854 the plaintiffs made an agreement in writing with Isaac M. Singer & Company, containing precisely similar provisions, and also the following : ART. 12. " Whenever regular quarterly payments as herein provided shall wholly

cease, this license shall cease and determine and be surrendered up by the licensees."

The defendants afterwards purchased and obtained from Singer & Company one hundred and ninety-two machines, made, stamped and numbered by Singer & Company according to their contract; and the defendants sold these machines during the continuance of their contract; but neither the defendants nor Singer & Company ever made any return of these ma-' chines or paid any license fee or royalty thereon to the plaintiffs.

Upon these facts the judge ruled that the plaintiffs were not entitled to recover on any of these machines, as they were obtained of Singer & Company, who had a license to make and sell them, and that it was immaterial whether Singer & Company had or had not paid to the plaintiffs any royalty on the same ; and directed a verdict for the defendants, which was returned, and the plaintiffs alleged exceptions.

*J. D. Ball,* for the plaintiffs.

*B. Dean,* (*W. Howland* with him,) for the defendants.

GRAY, J. In order to ascertain the reasonable and true construction of the contract between the parties, it is necessary to bear in mind the nature of the property or right to which it relates.

The object of the patent laws is to carry out that provision of the Constitution of the United States, which authorizes congress " to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." The existing patent act of the United States provides for granting to the inventor of any new and useful machine or improvement of a machine, his heirs, executors, administrators and assigns, for a term not exceeding fourteen years, " the full and exclusive right and liberty of making, using, and vending to others to be used," his invention. U. S. St. 1836, c. 357, §§ 5, 6 ; 5 U. S. Sts. at Large, 119. The patentee acquires not only the exclusive right of making and using the machine himself, but the monopoly of selling it to others to be used · and he may either assign his

patent as a whole, or in part undivided, or exclusively for a particular district; or he may license others to make, use and sell his invention, either generally or within a particular district; or he may license the use of, or sell, single machines. An assignment, (and possibly a license to make, use and sell,) is a transfer of a part of the franchise granted by the government to the patentee; a mere license to use a single machine, or a sale of a single machine, transfers no part of the franchise, but simply discharges that machine from the operation of the franchise, and puts it upon the common ground of other property. When a single machine, made under a patent, has been sold, either by the patentee, or by his assignee or licensee, acting within the authority conferred by an assignment or license, the machine thus sold is no longer subject to the franchise or monopoly, but may be freely used or resold by the purchaser during the term of the patent, without making himself or any subsequent purchaser liable to the patentee, or his assignee or licensee, for any use which may be made of the machine. The patentee having disposed of that machine in such manner and upon such terms as he may have seen fit, and received in consideration thereof such price or compensation, or such promise or obligation, as may have been agreed upon between himself and the other party, has no longer any right or interest in the particular machine.

The effect of the sale by a patentee, or by authority derived from him, of a machine made according to his patent, is clearly shown by a series of decisions in the supreme court of the United States. In the leading case of *Wilson* v. *Rousseau*, where a patentee had obtained a renewal of his patent for seven years, according to the eighteenth section of the act of 1836, the court held that he had no right to restrain the use of patented machines which had been purchased from him during the term of the original patent, and therefore a person who had purchased from him during that term the exclusive right to use two of the patented machines in a particular town, and was actually using two such machines there when that term expired, had the right to continue to use them or to sell them to others during the term of the extended patent. 4 How

684, 686. *Simpson* v. *Wilson,* Ib. 709. That section of the act of 1836 provided indeed that " the benefit of such renewal shall extend to assignees and grantees of the right to use the thing patented, to the extent of their respective interest therein." But the decision did not rest upon the words of that clause alone, and is not restricted to the case of a party using a machine which he obtained from the patentee himself, as is shown by the judgment in *Bloomer* v. *McQuewan,* 14 How. 539, in which it was held that the private act of congress of 1845, *c.* 27, (6 U. S. Sts. at Large, 936,) by which the same patent was extended for the further term of seven years, without any clause expressly protecting the rights of assignees or purchasers, did not entitle the patentee, or an assignee of the extended patent, to an injunction against the use of machines which had been constructed and used, before such an extension, under a license, obtained from an assignee of the original patent, to construct and use a certain number of the machines within a particular district. Chief Justice Taney, in delivering the opinion of the court, spoke thus of the purchaser of a particular machine : " In using it, he exercises no rights created by the act of congress, nor does he derive title to it by virtue of the franchise or exclusive privilege granted to the patentee. The inventor might lawfully sell it to him, whether he had a patent or not, if no other patentee stood in his way. And when the machine passes to the hands of the purchaser, it is no longer within the limits of the monopoly. It passes outside of it, and is no longer within the protection of the act of congress. And if his right to the implement or machine is infringed, he must seek redress in the courts of the state, according to the laws of the state, and not in the courts of the United States, nor under the law of congress granting the patent. The implement or machine becomes his private individual property, not protected by the laws of the United States, but by the laws of the state in which it is situated." And the chief justice expressed great doubt whether congress could deprive the purchaser of the right to use what had once become his property. 14 How. 549, 550, 553. In a subsequent case, the supreme court held that patented articles, made and used before

the expiration of an original patent, might, if the owner had acquired by assignment or otherwise the right of one having a license from the original patentee, be continued in use after the patent had been extended according to the act of congress of 1836; and reaffirmed the doctrine that "where the patented machine rightfully passes to the hands of the purchaser from the patentee, or from any person by him authorized to convey it, the machine is no longer within the limits of the monopoly." *Chaffee* v. *Boston Belting Co.* 22 How. 222, 223.

In the light of these principles and these authorities, the contract between the parties cannot reasonably receive the construction for which the plaintiffs contend. They mainly rely on the provision of the fifth article, by which the defendants promise to pay to the plaintiffs a certain fee " for each and every sewing machine of every name and nature whatsoever that shall hereafter be made, used or sold by them the said licensees, or either of them, or their assigns, during the continuance of this contract." But this clause must be taken in connection with the rest of the contract, and therefore limited to machines made, used or sold by them under this license.

The subject of the grant by the plaintiffs to the defendants to which the terms and conditions of the contract apply, is " the right and license under said patent to make, use, and vend to others to be used, sewing machines." By the first article, all the machines made, used or sold by the defendants under this license are to be numbered in regular order and stamped with the number in a durable manner. The machines now in question have been already so numbered by Singer & Company under a similar license; and it is difficult to see how new numbers can be stamped upon such articles after they have once been made, and absurd to suppose that the numbers of the defendants are to be added to or substituted for the numbers already stamped upon these machines by Singer & Company By the third article of each license every machine is to be sold by the licensees to be used in some certain locality. The locality of these machines has been already specified by Singer & Company; upon the plaintiffs' construction, is the right reserved

in this article to change the locality to be exercised by Singer & Company, who made and first sold the machines, or by the defendants, who have since purchased and sold them ? The fourth article, which provides for keeping a book of the numbers of the machines, the dates of sales, the names and residences of the purchasers, and the authorized localities of use, suggests like difficulties.

The fifth article itself declares that the fees are to be paid in consideration of and as a compensation for the license granted to the defendants and the agreements of the plaintiffs in this license, and for the purpose of avoiding controversy and litigation on questions of infringement. But the defendants did not need any license to enable them to purchase or sell machines obtained by them from other persons licensed by the patentees, and would not be liable for an infringement of the patent, by reason of any use or sale which they might make of machines so obtained.

The plaintiffs do not pretend that if they had been paid by Singer & Company license fees on these machines, they could recover any fees on the same machines from the defendants or any other licensees who should afterwards purchase them. See *Thomas* v. *Hunt,* 17 C. B. (N. S.) 183. But if the provisions of the license apply at all to machines purchased from other licensees, there is nothing in the language of the license to make any distinction in this respect between those machines on which the fee has been paid and those on which it has not.

The fact that the license to the defendants is earlier in date than that to Singer & Company is immaterial, if the machines in question were made and sold by Singer & Company under their license, and thus discharged from the plaintiffs' monopoly, before they passed into the hands of the defendants or were sold by them.

It is argued for the plaintiffs that as Singer & Company never paid any fee or made any return on these machines, their license, by virtue of the twelfth article thereof, was at an end, and can afford no protection to the defendants. But their license, by the terms of that article, was not to cease until the expiration of the

quarter, nor until they should wholly cease to make quarterly payments; and the plaintiffs offered no evidence that Singer & Company had not made payments quarterly on other machines, nor that the defendants did not purchase all the machines in question from Singer & Company before the expiration of the first quarter for which Singer & Company failed to make full returns.

The object of the defendants' license was to enable them to do what they could not do without it; not to subject them to liabilities, by virtue of having taken a license, for doing what any person who had no license whatever would have a perfect right to do, assuming the plaintiffs' patent to be valid. The whole tenor of this license shows that, although it sometimes speaks of machines " made, used or sold " by the defendants, it is only intended to apply to machines that are both made and sold by them, or used or sold by them and made without authority from the patentees; but not to machines which have been made, stamped and sold by other licensees, and thus discharged from the franchise and monopoly of the plaintiffs.

*Exceptions overruled.*